```
            THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

| | |
|---|---|
| ARVEST BANK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  No. 10-02004 |
| | ) |
| PRESTON E. BYRD, DONETTE L. | ) |
| BYRD, and PRESTON E. BYRD | ) |
| IRREVOCABLE INSURANCE TRUST, | ) |
| | ) |
|     Defendants. | ) |

## ORDER DENYING MOTION TO RECONSIDER

Before the Court is Defendants Preston E. Byrd ("Preston Byrd") and Donette L. Byrd's ("Donette Byrd") (collectively, the "Byrds") November 30, 2011 Motion to Reconsider. (Defs. Preston E. Byrd and Donette L. Byrd's Mot. to Reconsider Order on Mot. for Summ. J. as to Conversion, Money Had and Received, Unjust Enrichment and Restitution, Fraud, Fraudulent Conveyance, and Fraud in the Inducement and Intentional Misrepresentation, ECF No. 124 ("Mot. to Reconsider").) Defendants argue that the Court's Order on Summary Judgment (ECF No. 107 ("Summ. J. Order")) should have dismissed Plaintiff Arvest Bank's ("Arvest") claims of conversion, money had and received, unjust enrichment, restitution, fraud, fraudulent conveyance, fraud in the inducement, and intentional misrepresentation. (Id. 1.)

For the following reasons, this Court DENIES the Defendants' Motion.

## I.  Background

The relevant factual background for this case is set forth the Court's Summary Judgment Order. (Summ. J. Order 3-12.) Arvest contends that Horizon Holding Company, LLC ("Horizon Holding Company") sought funding for the construction of multifamily low and moderate income housing to be known as the Lamar Crossing Apartments project (the "Lamar Crossing Project"). The Lamar Crossing Project was funded by $8,100,000 in Multifamily Housing Revenue Bonds issued by the Health, Educational, and Housing Facility Board of the City of Memphis. Preston Byrd served as the agent and chief manager for Horizon Holding Company and was an undisclosed owner. Arvest contends that Preston Byrd defrauded Arvest by using its funds for his personal benefit instead of for the construction of the Lamar Crossing Project.

Arvest filed a complaint against the Byrds on January 5, 2010. (Compl., ECF No. 1.) Arvest filed an amended complaint on April 1, 2010 (Am. Compl., ECF No. 11), and a second amended complaint on June 3, 2010. (Second Am. Compl., ECF No. 24.) Arvest contends that the Byrds are liable for (1) conversion, (2) money had and received, unjust enrichment, and restitution, (3) fraud, (4) fraudulent conveyance, and (5) common law fraud

in the inducement and intentional misrepresentation. (See Second Am. Compl. ¶¶ 34-45, 49-73.) On August 26, 2011, the Court denied the Byrds' Motion for Summary Judgment. (Summ. J. Order.) The Byrds now move for reconsideration. (Mot. to Reconsider.)

## II. Jurisdiction and Choice of Law

Arvest Bank is an Arkansas corporation with its principal place of business in Arkansas.[1] The Byrds are Tennessee citizens. (Defs.' Ans. to Second Am. Compl. ¶¶ 3-4, ECF No. 28.) The trustee of the Byrd Trustee is Preston E. Byrd, a resident citizen of the State of Tennessee. (Second Am. Compl. ¶ 5, ECF No. 24.) "[F]or diversity purposes a trust is a citizen of whatever state the trustee is a citizen of." May Dep't Stores Co. v. Fed. Ins. Co., 305 F.3d 597, 599 (7th Cir. 2002). Arvest demands compensatory and punitive damages "in an amount not to exceed $15,000,000.00." (Second Am. Compl. 13.) That demand satisfies the amount-in-controversy requirement. 28 U.S.C. § 1332(a)(1). This Court has diversity jurisdiction over Arvest's claims. 28 U.S.C. § 1332(a).

The Court applied Tennessee law in its Summary Judgment Order, and no party contests that application. (Summ. J. Order 20-24.)

---

[1] The Court took judicial notice of Arvest's status as an Arkansas corporation with its principal place of business in Arkansas in its Summary Judgment Order. (Summ. J. Order 15.)

3

**III. Reconsideration**

Under Federal Rule of Civil Procedure 54(b), a court may revise any order before it issues an entry of judgment adjudicating all of the claims and all the parties' rights and liabilities. Fed. R. Civ. P. 54(b); Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." (citation omitted)).

"Rule 54(b), however, does not expressly provide for . . . motions by parties and does not prescribe any standards or bases for revisions of prior decisions." Lumpkin v. Farmers Grp., Inc., No. 05-2868 Ma/V, 2007 WL 6996777, at *3 (W.D. Tenn. July 6, 2007) (citation and internal quotation marks omitted). Courts generally revise interlocutory orders only "whe[re] there is 1) an intervening change of controlling law, 2) new evidence available, or 3) a need to correct a clear error or prevent manifest injustice."  That is the standard used to consider motions to amend or alter judgment filed under Federal Rule of Civil Procedure 59(e). Compare Louisville Jefferson Cnty. Metro Govt. v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) with ACLU of Ky. v. McCreary Cnty., 607 F.3d 439, 450 (6th Cir. 2009). "Motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been

4

raised prior to the entry to judgment.'" In re Regions Morgan Keegan Secs., Derivative, and ERISA Litig., No. 07-2784, 2010 U.S. Dist. LEXIS 137853, at *1 (W.D. Tenn. Dec. 30, 2010) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

**IV. Analysis**

The Byrds move the Court to reconsider its rulings on Arvest Bank's claims of conversion, money had and received, unjust enrichment, restitution, fraud, fraudulent conveyance, fraud in the inducement, and intentional misrepresentation. (Mot. to Reconsider 1.)

**A. Arvest's Conversion Claim**

"Conversion is an intentional tort." Greenbank v. Thompson, No. E2010-00160-COA-R3-CV, 2010 WL 5549231, at *3 (Tenn. Ct. App. Dec. 29, 2010). "To prove conversion, a plaintiff must show the following: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Greenbank, 2010 WL 5549231, at *3 (citing H&M Enters., Inc. v. Murray, No. M1999-02073-COA-R3-CV, 2002 WL 598556, at *3 (Tenn. Ct. App. Apr. 17, 2002); accord Thompson v. Thompson, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009). The intention necessary to establish conversion "does not necessarily have to be a matter

5

of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him." Thompson, 2009 WL 637289, at *14 (quoting Gen. Electric Credit Corp. of Tenn. v. Kelly & Dearing Aviation, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988)).

The Byrds argue that "Arvest has failed to provide any evidence that establishes any of the requirements necessary to make a claim for conversion against the Defendants" because "Arvest held no control, dominion, or ownership over any of the funds that they allege were converted." (Mot. to Reconsider 2.) The Byrds raised the same argument in their original motion for Summary Judgment, where they contended that "the property [at issue] was purchased with funds earned by [Horizon Holding Company] prior to the Lamar Crossing development . . . . Arvest has never had entitlement nor have they established that they could ever have any entitlement." (Byrds' Mem 19.)

The Court addressed this argument in its Summary Judgment Order, where it observed that "Arvest argues that Preston Byrd converted its money by transferring money Lamar Crossing Apartments, LP erroneously received from the Bank of New York Trust Company to Horizon Holding and then to himself and Donette Bird." (Order for Summ. J. 29.) Arvest contends that Byrd transferred funds to a bank account that he controlled and then

6

drew on for his own use. (Pl. Arvest Bank's Separate Statement of Material Facts in Supp. of Mot. for Summ. J. Against Def. Preston E. Byrd for Conversion and Fraud in the Inducement, in Opp'n to Defs.' Mot. for Summ. J. and in Supp. of Mot. for Summ. J. on Def. Byrd's Countercl. ¶¶ 23-24, ECF No. 41-2 ("Arvest's Statement of Facts").) Arvest's evidence is sufficient for a reasonable jury to find that Preston Byrd converted funds. The Byrds have not offered new evidence, shown that there has been a change in controlling law, or shown that there has been a manifest injustice. Their argument is not well taken.

### B. Arvest's Money Had and Received, Unjust Enrichment, and Restitution Claims

The Byrds argue that the Court erred in failing to dismiss Arvest's claims for money had and received, unjust enrichment, and restitution because "Arvest is not the true owner of the property that [Arvest] allege[s] was received by the Defendants." (Mot. to Reconsider 3.) The Byrds also argue that Arvest "has not provided any evidence that establishes the Defendants ever received any benefit." (Id. 4.)

"Both unjust enrichment and money had and received are essentially the same cause of action, being both quasi-contractual actions." Bennett v. Visa U.S.A. Inc., 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006). "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the

7

defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)); accord Hood Land Trust v. Hastings, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *6 (Tenn. Ct. App. Oct. 5, 2010).

The Court concluded that "Arvest has offered evidence that Preston Byrd and Donnette Byrd received money from Arvest and kept the money for themselves." (Order for Summ. J. 45.) Arvest has provided evidence showing that Preston Byrd diverted money from the Bank of New York to Horizon Holding Company and then to himself. (Arvest's Statement of Facts ¶¶ 20-27.) Arvest has provided ample evidence in support of its contention, including bank records detailing Preston Byrd's transactions. (See Exs. J-M, ECF Nos. 41-13 to 41-16 & Exs. T-V, ECF Nos. 41-23 to 41-25.) The Byrds repeat the arguments they raised in their Motion for Summary Judgment. (See Mot. for Summ. J. 25-26.) Those arguments are unavailing.

### C. Arvest's Claims for Fraud, Fraudulent Inducement, and Intentional Misrepresentation

The Byrds argue that the Court's decision not to grant summary judgment on Arvest's fraud claims is erroneous because

8

in a related matter, Arvest Bank v. Byrd, No. 10-2007, 2011 U.S. Dist. LEXIS 72144, at *23-24 (W.D. Tenn. July 5, 2011), the Court did not grant summary judgment in favor of Arvest.

The Byrds misconstrue the Court's Summary Judgment Order and the standard for summary judgment. Summary judgment is granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). Arvest Bank v. Byrd applied this standard when it ruled against Arvest's motion for summary judgment, concluding that "a reasonable jury could find that Byrd did not make an intentional misrepresentation of material fact." 2011 U.S. Dist. LEXIS 72144, at *20. When the Byrds filed their motion for summary judgment here, they did so as the moving party, and so all reasonable inferences must be drawn against them. Kochins, 799 F.2d at 1133.

In concluding that there was an issue of material fact, the Court relied on statements made by Preston Byrd and his

9

colleague Orson Sykes ("Sykes"), a co-owner of Horizon Holding Company, (Arvest's Statement of Facts ¶¶ 1-7) and the Membership Transfer Agreement signed by Sykes, Byrd, and James Hutton ("Hutton"), the other co-owner. (Ex. Y, ECF No. 41-28.) Arvest's evidence establishes a genuine issue of material fact about whether Preston Byrd fraudulently induced Arvest to invest in the Lamar Crossing Project. Summary judgment is inappropriate when there is a disputed issue of material fact. The Byrds' argument is not well taken.

**D. Arvest's Fraudulent Conveyance Claim**

The Byrds argue that Arvest is unable to bring a claim for fraudulent conveyance because "Arvest was not a creditor of the Defendants," because Horizon Holding Company was not rendered insolvent by the transaction, and because "the transfer of the real property was made over two years prior to Arvest ever filing a claim against the Defendants." (Mot. to Reconsider 8.)

The Byrds raised these arguments in their original motion for summary judgment. (See Mot. for Summ. J. 19-21.) "Motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry to judgment.'" In re Regions Morgan Keegan Secs., Derivative, and ERISA Litig., 2010 U.S. Dist. LEXIS 137853, at *1 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

10

Arvest has provided ample evidence that it was the "primary lender and purchaser of the Lamar Crossing project bonds." (Arvest's Statement of Facts ¶ 14.) Arvest is the sole owner of the bonds. (Id.) The bonds were intended to fund construction of the Lamar Crossing Project, but Arvest has introduced evidence showing that Preston Byrd used the project's money for his own ends. (Avest's Statement of Facts ¶¶ 14-25.) Arvest has established sufficient facts for a reasonable jury to conclude that it was a defrauded creditor.

The Byrds argue that the transfer of property from Horizon Holding Company to the Byrds in December 2007 could not have been a fraudulent conveyance because it was made two years before Arvest brought suit against them. (Mot. to Reconsider 20.) They also argue that the transfer of two automobiles to them from Horizon Holding Company, a 2008 S550 Mercedes and a 2007 GL4 Mercdes was made in March 2008, "almost two (2) years prior to Arvest filing a claim against [Preston] Byrd." (Id. 20.) The statute of limitations for a claim for fraudulent conveyance is four years. Tenn. Code. Ann. § 66-3-310. That the transfer took place two years before Arvest brought a claim does not bar that claim.

The Court concluded that Arvest had offered sufficient evidence to support its claim of fraudulent conversion, including Preston Byrd's transfer of the automobiles to Donette

11

Byrd for no consideration fifteen days before a subcontractor stopped work for nonpayment. (Arvest's Statement of Facts ¶ 42). Preston Byrd's decision to transfer a house and automobiles to himself for little or no consideration was a sufficient basis for the Court to conclude that a reasonable jury could find there had been a fraudulent conveyance.

A fraudulent conveyance need not leave a party insolvent immediately after the transfer. Tennessee law does not require a party to be insolvent at the time of the conveyance; it is enough that a defendant was "engaged [in] or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small" or "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Tenn. Code Ann. 66-3-305(a)(1)(2). The conveyance may be set aside so long as "it is made with the actual intent to hinder, delay, or defraud creditors." In re Estate of Reynolds, No. W2006-01076-COA-R3-CV, 2007 WL 2597623, at *11 (Tenn. Ct. App. Sept. 11, 2007) (citation omitted).

The Byrds have offered no grounds for the court to reconsider. Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004).

**V.   Conclusion**

12

The Byrds cite no new law or facts. They have not shown there was a clear error or manifest injustice. They do not offer new evidence. They repeat arguments they raised in their motion for summary judgment, which the Court has considered and denied. For the foregoing reasons, the Byrds' Motion to Reconsider is DENIED.

So ordered this 8th day of December, 2011.

                                        /s Samuel H. Mays, Jr.
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE