IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ARVEST BANK, | ) |
| | ) |
| Plaintiff, | ) No. 10-2004 |
| | ) |
| v. | ) |
| | ) |
| PRESTON E. BYRD, DONETTE L. | ) |
| BYRD, and PRESTON E. BYRD | ) |
| IRREVOCABLE INSURANCE TRUST, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER

Before the Court is Plaintiff Arvest Bank's ("Arvest")
October 24, 2011 Motion to Reconsider. (See Pl. Arvest Bank's
Mot. to Reconsider Order on Mots. for Summ. J. as to Conversion
Claim, ECF No. 120) ("Mot. to Reconsider.")  Defendant Preston
E. Byrd ("Byrd") responded on November 30, 2011. (See Preston E.
Byrd's Reply Mem. in Resp. to Arvest Bank's Mot. to Reconsider
Order on Mot. for Summ. J. as to Conversion Claim, ECF No. 123)
(the "Byrd Reply.")  For the following reasons, Arvest's Motion
to Reconsider is DENIED.

### I.   Background

The background and relevant facts are stated in the Court's
Order on Summary Judgment Motions. (See Order on Summ. J. Mots.
3-12, ECF No. 107) ("Summ. J. Order.")  Arvest contends that

1

Horizon Holding Company, LLC ("Horizon Holding Company") sought funding for the construction of multifamily low and moderate income housing to be known as the Lamar Crossing Apartments project (the "Lamar Crossing Project"). The Lamar Crossing Project was funded by $8,100,000 in Multifamily Housing Revenue Bonds issued by the Health, Educational, and Housing Facility Board of the City of Memphis. Horizon Holding Company was the sole owner of Lamar Crossing Development, LLC ("Lamar Crossing Development"), which served as the Developer of the Lamar Crossing Project.[1] Byrd served as the chief manager of Horizon Holding Company and Lamar Crossing Development and was an undisclosed owner of Horizon Holding Company.

On June 14, 2007, Lamar Crossing Apartments, LP and Lamar Crossing Development entered into a Development Agreement.[2] (See Development Agreement 1.) The Development Agreement detailed the parties' obligations to complete construction and pay construction costs and developer fees for the Lamar Crossing Project. Section 6(a) stated:

> For its services in connection with the development of the Apartment Complex and the supervision of the construction of the Apartment Complex, and as reimbursement for Development Advances, the Developer shall receive a fee (the "Development Fee") in the amount of $1,365,000. The

---

[1] The Development Agreement lists Lamar Crossing Development as the "Developer" of the Lamar Crossing Project. (See Development Agreement 9, ECF No. 112-2) (the "Development Agreement.")

[2] The Lamar Crossing Apartments, LP is a general partner of Horizon Holding Company. (See Development Agreement 9.)

> Development Fee shall be deemed to have been earned as
> and when the Developer's services are rendered and
> such Development Fee shall be paid out of Designated
> Construction Proceeds . . . [N]ot more than $250,000
> of the Development Fee shall be paid out of the
> proceeds of said First Installment, not more than an
> additional $250,000 shall be paid out of proceeds of
> the Third Installment, not more than an additional
> $177,767 shall be paid out of proceeds of the Fourth
> Installment, and not more than an additional $343,653
> shall be paid out of proceeds of the Fifth
> Installment.

Arvest contends that, from September 2007 to May 2008, Byrd transferred and diverted $1,280,000 in proceeds that had been erroneously paid to one of Horizon Holding Company's accounts that Byrd controlled. (Order on Summ. J. 8.)

Arvest filed a complaint against Byrd, his wife Donette L. Byrd, and the Preston E. Byrd Irrevocable Insurance Trust on January 5, 2010. (Compl., ECF No. 1.) Arvest filed an amended complaint on April 1, 2010 (Am. Compl., ECF No. 11), and a second amended complaint on June 3, 2010. (Second Am. Compl., ECF No. 24.) Arvest contends that the Byrds are liable for (1) conversion, (2) money had and received, unjust enrichment, and restitution, (3) fraud, (4) fraudulent conveyance, and (5) common law fraud in the inducement and intentional misrepresentation. (See Second Am. Compl. ¶¶ 34-45, 49-73.) On September 8, 2010, Arvest moved for Summary Judgment on its conversion claim. (See Pl.'s Mot. for Summ. J., ECF No. 41.) Arvest argued that Byrd had converted $1,280,000 for his

personal benefit instead of for the construction of the Lamar Crossing Project. On August 26, 2011, the Court denied Arvest's Motion for Summary Judgment on its conversion claim. (Summ. J. Order 27-31.) Byrd created a dispute of material fact when he claimed that "any fees that were received by [Horizon Holding Company] . . . were for services rendered under the terms of the Development Agreement." (Order on Summ. J. 30.)

Arvest asks the Court to reconsider its decision on Arvest's conversion claim. Arvest contends that Byrd did not create a dispute of material fact because, as a matter of law, Horizon Holding Company could not have received more than $250,000 in Development Fees under Section 6(a) of the Development Agreement. (Mot. for Reconsideration 3.) Arvest contends that the Development Agreement contemplates payment of the Development Fees "when the Developer's Services are rendered." (Id.) The services contemplated by the Development Agreement were not rendered and the fees were not fully received because the Lamar Crossing Project was never completed. Therefore, Arvest argues that Horizon Holding Company could not have received the full Development Fees. (Mot. for Reconsideration 3.) Byrd responds that "Arvest has suggested that this is a legal issue and not a factual issue and they are correct. The legal components of [] conversion prohibit Arvest

from making a conversion claim against Byrd." (See Byrd Reply 4.)

## II. Reconsideration

Under Federal Rule of Civil Procedure 54(b), a court may revise any order before it issues an entry of judgment adjudicating all of the claims and all of the parties' rights and liabilities. Fed. R. Civ. P. 54(b); Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." (citation omitted)).

"Rule 54(b), however, does not expressly provide for . . . motions by parties and does not prescribe any standards or bases for revisions of prior decisions." Lumpkin v. Farmers Grp., Inc., No. 05-2868 Ma/V, 2007 WL 6996777, at *3 (W.D. Tenn. July 6, 2007) (citation and internal quotation marks omitted). Courts generally revise interlocutory orders only "whe[re] there is 1) an intervening change of controlling law, 2) new evidence available, or 3) a need to correct a clear error or prevent manifest injustice." That is the standard used to consider motions to amend or alter judgment filed under Federal Rule of Civil Procedure 59(e). Compare Louisville Jefferson Cnty. Metro Govt. v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009)

5

with <u>ACLU of Ky. v. McCreary Cnty.</u>, 607 F.3d 439, 450 (6th Cir. 2009). "Motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry to judgment.'" <u>In re Regions Morgan Keegan Secs., Derivative, and ERISA Litig.</u>, No. 07-2784, 2010 U.S. Dist. LEXIS 137853, at *1 (W.D. Tenn. Dec. 30, 2010) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

**III. Analysis**

The sole issue before the Court is whether its decision on Arvest's conversion claim merits reconsideration. Arvest argues that, as a matter of law, Horizon Holding Company was not entitled to more than $250,000 under the Development Agreement. (Mot. for Reconsideration 3.) Arvest's Motion identifies no new evidence, intervening change in law, or manifest injustice, and never argues that clear error requires reconsideration. The words "clear error" never appear. The Motion cites neither relevant case law nor the standard of review.[3] Arvest's argument for reconsideration is not well taken.

---

[3] Arvest cites a pending Motion in Limine in its Motion to Reconsider. (<u>See</u> Pl. Arvest Bank's Combined Am. Mot. in Limine, Mem., Cert. of Consultation and Request for Jury Instr. as to Contract Provisions Governing Timing of Payment of Development Fee, ECF No. 112) ("Mot. in Limine.") Arvest "incorporates by reference the legal arguments made in that motion." (<u>See</u> Mot. to Reconsider 3.) Arvest cites <u>Vencor, Inc. v. Std. Life and Accident Ins. Co.</u>, 317 F.3d 629, 634-35 (6th Cir. 2003), in its Motion in Limine. (<u>See</u> Mot. in Limine 4.) <u>Vencor</u> is a breach of contract case.

"Conversion is an intentional tort." Greenbank v. Thompson, No. E2010-00160-COA-R3-CV, 2011 U.S. Dist. LEXIS 96570, at *3 (Tenn. Ct. App. Dec. 29, 2010). "To prove conversion, a plaintiff must show the following: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Greenbank, 2011 U.S. Dist. LEXIS 96570, at *3 (citing H&M Enters., Inc. v. Murray, No. M1999-02073-COA-R3-CV, 2002 WL 598556, at *3 (Tenn. Ct. App. Apr. 17, 2002); accord Thompson v. Thompson, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009). The intention necessary to establish conversion "does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him." Thompson, 2009 WL 637289, at *14 (quoting Gen. Electric Credit Corp. of Tenn. v. Kelly & Dearing Aviation, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988)).

Arvest presents a more specific and detailed version of the argument that the Court has previously rejected. In its Motion for Summary Judgment, Arvest argued that the retention of $1,280,000 "was [] contrary to the fiduciary and contractual obligations of . . . Horizon Holding and the individual

7

guarantors under the Partnership Agreement, <u>Development</u>
<u>Agreement</u> and Guaranty of Completion Agreement." (<u>Id.</u>)
(emphasis added.) Arvest also contended that Horizon Holding
Company was not entitled to Developer Fees under Section 6(a)
because the fees were "to be paid in four installments out of
the equity installments . . . and those equity installments were
to paid on achievement of certain goals." (<u>See</u> Pl. Arvest
Bank's Resp. in Opp. To Def.'s Second Mot. for Summ. J. and
Separate Statement of Material Facts 4-5, ECF No. 67) ("Arvest
Resp. to Def.'s Second Mot. for Summ. J.")

The Court addressed Arvest's argument and considered the
Development Agreement in its Summary Judgment Order and
concluded that Byrd had raised "a genuine dispute for trial
about a link in the chain of evidence Arvest presents to argue
that he converted [$1,280,000]." (Order on Summ. J. 30.)
Motions for reconsideration "'may not be used to relitigate old
matters.'" <u>Glass v. Northwest Airlines, Inc.</u>, 2011 U.S. Dist.
LEXIS 69288, at *10 (W.D. Tenn. June 28, 2011) (quoting <u>In re</u>
<u>Morgan Keegan Secs., Derivative, and ERISA Litig.</u>, 2010 U.S.
Dist. LEXIS 137853, at *1). Although Arvest's argument for
reconsideration is more specific than its argument for summary
judgment, "parties cannot use a motion for reconsideration to
raise new legal arguments that could have been raised before [an

order] was issued." Roger v. Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 395 (6th Cir. 2007).

Arvest's argument also fails on its merits. Arvest relies on Vencor, 317 F.3d at 634-35, which held that, "[w]here a contract provision is unambiguous, construction and interpretation of the contract is for the Court, not the jury." According to Arvest, the Development Agreement is unambiguous in that the developer cannot receive fees before completion of the project. (Id.)

Vencor is a breach of contract case where "the resolution of th[e] case ultimately turn[ed] on the interpretation of a term in [an] insurance policy." Vencor, Inc., 317 F.3d at 634. The term was "Medicare eligible expenses." 317 F.3d at 635. Although conversion claims are often "factually intertwined" with contracts, breach of contract and conversion are separate claims that depend on separate analyses and issues. See Academic Imaging, LLC v. Soterion Corp., 352 F. App'x 59, 67 (6th Cir. 2009); compare Fed. Ins. Co. v. Winters, No. E2009-02065-SC-R11-CV, 2011 Tenn. LEXIS 968, at *9 (Tenn. Oct. 25, 2011) ("In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach.") with Greenbank, 2011 U.S. Dist. LEXIS, at *3 ("To prove conversion, a plaintiff must show: (1) the appropriation

of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights.").

Arvest conflates breach of contract and conversion. There is no breach of contract claim before the Court. Neither party seeks to have the contract interpreted as a matter of law. In its Summary Judgment Order, the Court concluded that Byrd's claim that Horizon Holding Company received $1,280,000 as Development Fees was an evidentiary issue for the jury. (Order on Summ. J. Mots. 30.) The jury will assess the credibility of witnesses and weigh the evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## IV. Conclusion

For the foregoing reasons, Arvest's Motion to Reconsider is DENIED.

So ordered this 12th day of December, 2011.

.

                                        s/ Samuel H. Mays, Jr._____
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE