IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ARVEST BANK, | ) |
| | ) |
|     Plaintiff, | ) No. 10-2004 |
| | ) |
| v. | ) |
| | ) |
| PRESTON E. BYRD, DONETTE L. | ) |
| BYRD, and PRESTON E. BYRD | ) |
| IRREVOCABLE INSURANCE TRUST, | ) |
| | ) |
|     Defendants. | ) |

**ORDER DENYING PLAINTIFF'S MOTION IN LIMINE**

Before the Court is Plaintiff Arvest Bank's ("Arvest") October 6, 2011 Amended Motion in Limine and Request for Jury Instructions. (ECF No. 112) ("Amended Motion in Limine"). Defendant Preston Byrd ("Byrd") responded on October 14, 2011. (ECF No. 119) ("Byrd Response").

Arvest is suing Byrd for conversion and fraud in the inducement. Byrd was the agent and chief manager for Horizon Holding Company, LLC ("HHC") and was an undisclosed owner. (Second Am. Compl. ¶ 12, ECF No. 24.) HHC sought funding for the construction of multifamily low and moderate income housing to be known as the Lamar Crossing Apartments. (Id. ¶¶ 10-11.) The Development Agreement (the "Development Agreement") established a pay schedule for dispersing Developer Fees (the

1

"Developer Fees") to HHC.[1] Arvest contends that Byrd converted those Developer Fees for his personal benefit. (Id. ¶¶ 20-33.)

Arvest requests "entry of an Order excluding from the trial . . . any testimony, evidence or argument that [] Byrd was justified under the governing contracts in transferring any amounts over $250,000 from the bank accounts of Lamar Crossing Apartments, LP to the bank accounts of Horizon Holding Company, LLC." (Am. Mot. in Limine 1.) According to Arvest, evidence that Byrd was entitled to transfer more than $250,000 is irrelevant and unfairly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence. Arvest also asks the Court to instruct the jury that, as a matter of law, payment of no more than $250,000 of the Developer Fees was permitted by the governing contracts until completion of the Lamar Crossing Apartments project. (See id.) For the following reasons, Arvest's Motion is DENIED.

**I. Analysis**

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency" to make the existence of any consequential fact more or less probable. See

---

[1] Section 6(a) of the Development Agreement states that "not more than $250,000 of the Development Fee shall be paid out [] of said First Installment, not more than an additional $250,000 shall be paid out [] of the Third Installment, not more than [] $177,767 shall be paid out [] of the Fourth Installment, and not more than [] $343,653 shall be paid out [] of the Fifth Installment." (See Development Agreement §6(a), ECF No. 112-2.) The Development Agreement directs payment of the Developer Fees "as of and when the Developer's Services are rendered." (Id.)

Fed. R. Evid. 401, 402. Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Fed. R. Evid. 403.

### A. Rule 402

Arvest's Motion addresses the Development Agreement. (See Am. Mot. in Limine 3-4.) The Court's threshold inquiry is whether Byrd's testimony that he received $1,280,000 as Developer Fees under the Development Agreement is relevant. "The standard for relevancy is 'extremely liberal' under the Federal Rules of evidence." United States v. Clark, 377 F. App'x 451, 456 (6th Cir. 2010) (quoting Dortch v. Fowler, 588 F.3d 396, 400 (6th Cir. 2009)). Byrd contends that he received Developer Fees for services rendered under the Development Agreement. ("Byrd Resp. 1-3.) That assertion has a direct bearing on whether Byrd is liable for conversion. Evidence that Byrd was justified under the Development Agreement and governing contracts to transfer amounts more than $250,000 is relevant.

### B. Rule 403

Arvest argues that evidence of receiving more than $250,000 in Developer Fees under the Development Agreement is inadmissible under Rule 403. Although Arvest's Motion is not

3

specific, the Court understands Arvest to be challenging Byrd's evidence as unfairly prejudicial under Rule 403. (See Am. Mot. in Limine 5) ("Defendants cannot be allowed to usurp the Court's role as interpreter of unambiguous contract provisions by urging the jury that because a developer fee was contemplated under the agreements to be eventually owed and paid, they were entitled to take the fee early in derogation of explicit provisions.") (emphasis in original).

Allegedly prejudicial evidence is reviewed "in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Knox, 17 F. App'x 353, 358 (6th Cir. 2001). Exclusion is appropriate "only where the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice." Id.; see also Humana, Inc. v. Shook, No. 85-5478, 1986 U.S. App. LEXIS 27825, at *6 (6th Cir. June 3, 1986). For evidence to be unfairly prejudicial, it "must be more than damaging or simply adverse." Shook, 1986 U.S. App. LEXIS 27825, at *6. "[U]nfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'" United States v. Dotson, No. 09-6120, 2011 U.S. App. LEXIS 24033, at *8 (6th Cir. Dec. 2, 2011) (quoting United States v. Schrock, 855 F.2d 327, 335 (6th Cir. 1988)).

Avest argues that permitting the jury to hear Byrd's evidence would introduce an "improper basis" for deciding the case. According to Arvest, the Development Agreement "expressly and unambiguously forbid[s] the payment of any more than $250,000 of the developer fee until construction is complete, which never occurred." (Am. Mot. in Limine 4.) Arvest contends that, "[w]here a contract provision is unambiguous, construction and interpretation of the contract is for the Court, not the jury." (Id.) (quoting Vencor, Inc. v. Std. Life and Accident Ins. Co., 317 F.3d 629, 634-35 (6th Cir. 2003)). Arvest's argument is not well taken.

Vencor was a breach-of-contract case where "the resolution . . . ultimately turn[ed] on the interpretation of a term in [an] insurance policy." Vencor, Inc., 317 F.3d at 634 (interpreting "Medicare eligible expenses."). Although conversion is often "factually intertwined" with a contract, conversion and breach of contract are separate claims. See Academic Imaging, LLC v. Soterion Corp., 352 F. App'x 59, 67 (6th Cir. 2009); see also Greenbank v. Thompson, No. E2010-00160-COA-R3-CV, 2010 Tenn. App. LEXIS 806, at *3 (Tenn. Ct. App. Dec. 29, 2010) ("Conversion is an intentional tort."). "To prove conversion, a plaintiff must show the following: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it,

5

(3) in defiance of the true owner's rights." Id. (citation omitted). Byrd has asserted that he received the disputed funds in accordance with the Development Agreement. (See Byrd Resp. 1-3.) Byrd's evidence directly bears on proving the elements of conversion. See Greenbank, 2010 Tenn. App. LEXIS 806, at *3. That the evidence may be "damaging or simply adverse" to Arvest's argument is insufficient to demonstrate unfair prejudice. Shook, 1986 U.S. App. LEXIS 27825, at *6. Proving that Byrd converted Arvest's funds requires an analysis different from the analysis in Vencor.

## II. Conclusion

For the foregoing reasons, Arvest's Motion is DENIED.

So ordered this 16th day of December, 2011.

                                  s/ Samuel H. Mays, Jr._____
                                  SAMUEL H. MAYS, JR.
                                  UNITED STATES DISTRICT JUDGE